UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DIXON, | ) | Case No.: 1:12 CV 1213 |
| | ) | |
| Plaintiff | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) | |
| | ) | |
| MATTHEW NEUBACHER, *et al.*, | ) | |
| | ) | <u>ORDER</u> |
| Defendants | ) | |

Currently pending before the court is Defendants Matthew Neubacher ("Neubacher") and Albert Naus's ("Naus") (collectively, "Defendants") Motion for Summary Judgment (ECF No. 32), which this court referred to Magistrate Judge Kenneth S. McHargh for preparation of a Report and Recommendation ("R&R"). Magistrate Judge McHargh submitted his R&R (ECF No. 37) on January 27, 2015, recommending that the court grant in part and deny in part Defendants' Motion. Plaintiff James Dixon ("Dixon" or "Plaintiff") filed Objections to the R&R (ECF No. 39), as did Defendants (ECF No. 41). For the following reasons, the court adopts the Magistrate Judge's R&R and overrules all objections.

**I. BACKGROUND**

The parties do not object to the Magistrate Judge's recitation of the facts. The court restates the facts as follows:

> On October 4, 2011, Dixon was an inmate at the Mansfield Correctional Institution in Mansfield, Ohio. (Deposition of James Dixon ("Dixon Dep.") at 7:13-19, Doc. No. 28). Inmates were assigned a security level ranging from "Level 1 to Level 5," where Level 5 represented the most problematic or dangerous prisoners. (Deposition

of Albert Naus ("Naus Dep.") at 21:8-21, Doc. No. 30). Dixon was a security Level 4. (*Id.*). He was in a single cell. (Dixon Dep. at 8:1-2). Dixon's cellblock contained two levels, with Dixon's cell located in the upper level. (Deposition of Matthew Neubacher ("Neubacher Dep.") at 13:18-19, Doc. No. 29). Corrections Officers Neubacher and Naus oversaw Dixon's cellblock that evening. (*Id.* at 13:20-25).

While the officers were on duty, Dixon began talking to an inmate located in a cell across from his own, but within the same block of cells. (Dixon Dep. at 9:1-9). Dixon claimed that because other inmates were speaking loudly to each other across the cellblock, he had to raise his voice in order to be heard. (*Id.* at 9:10-20).

Contrary to Dixon's account, Officer Neubacher described Dixon as kicking on his door, yelling, and attempting to get other inmates to do the same. (Neubacher Dep. at 10:12-15). Defendants were concerned that Plaintiff was engaged in "cell banging." (Naus Dep. at 13:3-22). Cell banging could result in chaotic activity among inmates, such as inmates yelling, throwing bodily fluids and food under their doors, flooding toilets and sinks, and flooding the range. (*Id.*).

Officer Neubacher went to Dixon's cell and instructed Dixon to be quiet. (Dixon Dep. at 9:21-10:4; Neubacher Dep. at 10:15-17). After Officer Neubacher left the cell, Dixon resumed his prior conduct. (*Id.*). Due to Plaintiff's noncompliance, Officer Neubacher, accompanied by Officer Naus, returned to Plaintiff's cell to conduct a search. (Neubacher Dep. at 10:18-22). Defendants explained that cell searching is a technique used to induce prisoners to cooperate. (Neubacher Dep. at 10:23-11:4; Naus Dep. at 14:3-9).

The officers approached Dixon's cell and instructed him to "cuff up," meaning that he was to back up to the cuff port located in the cell door, allowing an officer to handcuff his arms behind his back. (Dixon Dep. 10:8-18). Plaintiff complied and then exited the cell as Officer Neubacher requested. (*Id.* at 10:16-11:10). While Officer Neubacher entered the cell to search it, Officer Naus remained next to Plaintiff outside of the cell. (*Id.* at 11:11-12:4). Dixon testified that Officer Neubacher only "acted like he was looking for something" and appeared to make little effort to conduct a true search. (*Id.* at 12:5-24).

According to Dixon, Officer Neubacher ordered him to re-enter the cell, and Dixon did so. (Dixon Dep. at 14:19-22). When the two were in the cell together, Neubacher asked Plaintiff whether he would be quiet, and Plaintiff responded that he would not. (*Id.* at 15:13-22). The officer retrieved pepper spray from his hip. (*Id.* at 15:24). Officer Neubacher then grabbed Dixon by the shirt, punched him in the face, pepper sprayed him, and "slung" him headfirst into a metal footlocker located on the floor of the cell. (*Id.* at 16:20-17:14, 19:5-16). As he fell to the floor, Dixon struck his head on the footlocker. (*Id.* at 17:13-14).

Dixon maintains that when Neubacher retrieved his pepper spray, Naus was standing on the side of the open door of the cell. (Dixon Dep. at 15:25-16:5). When Dixon collided with the footlocker, Naus "pulled" the cell door closed to the point where there was no longer an opening that would allow someone to see into the cell from the outside, but without engaging the lock on the door. (*Id.* at 21:9-22, 22:7-25). Officer Neubacher was in the cell with Dixon when Officer Naus closed the door in the fashion that Dixon described. (*Id.* at 21:15-22). Following Dixon's fall, Neubacher left the cell. (*Id.* at 22:2-4).

Dixon stated that roughly three or four minutes passed from the time that Neubacher ordered him to re-enter the cell until the end of their altercation. (Dixon Dep. at 27-28). Dixon averred that he made no attempts to attack Neubacher while they were in the cell together. (*Id.* at 46:23-47:4). Naus did not recall writing Dixon up for being disrespectful or disobedient based on the occurrence. (Naus Dep. at 36:16-21).

The parties present somewhat differing accounts of what Officer Naus was doing while the officers were at Dixon's cell. Naus explained that while Neubacher searched the cell, Dixon stood in front of the cell's open doorway, and he stood next to Dixon. (Naus. Dep. at 24:18-20). Officer Naus did not observe Officer Neubacher conduct the search, because he was focused on Dixon. (*Id.* at 26:23-27:4).

Officer Neubacher claimed that Naus came in to the cell behind Dixon at some point after Dixon had re-entered. (Neubacher Dep. at 23:7-11, 32:1-7). Officer Naus and Dixon, however, did not indicate that Naus followed Dixon into the cell. Naus testified that when Dixon entered the cell before being sprayed, he was unable to see Officer Neubacher, because Dixon obstructed his view. (Naus Dep. at 43:25-44:4). Naus explained that it was standard procedure for officers to have their pepper spray in hand while conducting a search, and as a result, he knew Officer Neubacher had pulled his spray before Dixon entered the cell. (*Id.* at 33:7-13). Officer Naus stated he did not observe Neubacher raise his hand to pepper spray Dixon, but realized that the spray was released because he could smell it. (*Id.* at 33:14-21). Officer Naus also claimed that he did not see Dixon collide with the footlocker, but heard Dixon yelling that he had hit his head and needed to see a nurse. (*Id.* at 33:22-25, 35:12-17).

Following the incident, Dixon suffered pain in his eyes from the pepper spray, a knot above his left ear, a swollen jaw, and an abrasion on his chest. (Dixon Dep. at 44:9-19). Dixon claimed that he remained handcuffed in his cell for approximately 30 minutes before receiving medical attention. (*Id.* at 23-24, 39:16-22). A nurse examined Dixon, performed a skin stitch, and administered a tetanus shot. (Doc. No. 32-2). Dixon claimed that the nurse did not give him the opportunity to

> "say anything," because the two had problems with "smart-mouthing" one another in the past. (Dixon Dep. at 36:14-24). Dixon stated that he did not ask for further treatment after the nurse repaired a wound on his ear, because she sent him away immediately. (*Id.* at 38:2-15).
>
> In contrast to Dixon's account, Officer Neubacher recalled that Dixon was screaming at the nurse. (Neubacher Dep. at 18:13-19). Officer Naus stated that Dixon's unruliness and foul language limited the nurse's ability to render treatment. (Naus Dep. at 30:22-25). Prison records indicate that Plaintiff's clinic check ended due to his hostile behavior toward the nurse. (Doc. No. 32-2). Another portion of those records reflect that Dixon told the nurse he was "ok" and wanted to go outside to get fresh air. (*Id.*).
>
> Approximately one and a half years after his encounter with Officer Neubacher, on June 23, 2013, Dixon requested medical care for a lump on the left side of his head. (Dixon Dep. at 45:13-25). Dixon claimed the injury resulted from the October 2011 confrontation in his cell, but out of fear that he would be denied care, he did not mention this fact when he sought treatment. (*Id.*).

(R&R at 1-5.)

Plaintiff's Second Amended Complaint (ECF No. 26) clarified the claims that he is alleging in this lawsuit: pursuant to 42 U.S.C. § 1983, Neubacher used excessive force, Naus failed to intervene, and both Defendants acted with deliberate indifference in denying him medical care; a state law claim of assault against both Defendants; and a state law claim of battery against both Defendants. Defendants moved for summary judgment on all claims. The Magistrate Judge found that genuine issues of material fact existed as to Plaintiff's claim against Neubacher for excessive force and denied his request for qualified immunity on this claim. The Magistrate Judge further determined that no genuine dispute of material fact existed as to Plaintiff's claim that Naus failed to intervene and Plaintiff's state law claims. As to Plaintiff's deliberate indifference to medical needs claim, the Magistrate Judge found that Defendants made no argument as to why they were entitled to summary judgment and declined to analyze the merits of this claim. Finally, the Magistrate Judge determined that this court does not have jurisdiction over Plaintiff's state law

claims because, as required by Ohio law, the Ohio Court of Claims has not determined that Defendants are not entitled to immunity on these claims. Defendants filed objections to the Magistrate Judge's findings regarding Plaintiff's excessive force claim against Neubacher and Neubacher's claim that he is entitled to qualified immunity, as well as Plaintiff's deliberate indifference to medical needs claim. Plaintiff filed objections regarding the Magistrate Judge's findings on his claim for failure to intervene and objected to the R&R to the extent that it can be read as granting Naus qualified immunity on Plaintiff's claim that Defendants acted with deliberate indifference to Plainitff's medical needs. Plaintiff did not file objections regarding the dismissal of his state law claims.

## II. LEGAL STANDARD

A district court may refer certain dispositive motions, including motions for summary judgment, to a magistrate judge for the preparation of "proposed findings of fact and recommendations for the disposition" of those motions. 28 U.S.C. § 636(b)(1)(B). If the parties object to the Report and Recommendation, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (citation omitted). The court may accordingly adopt or reject the findings of the Magistrate Judge. *Id.*

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Though the Rule was amended in 2010, the summary judgment standards and burdens have not materially changed. *See* Fed. R. Civ. P. 56 advisory committee's notes (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."); *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4 (1st Cir. 2011). In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie case showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of

the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id.* Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

#### A. Excessive Use of Force

Construing the facts in a light most favorable to Plaintiff, the Magistrate Judge determined that a jury could reasonably find that Neubacher's actions in pepper-spraying Plaintiff and then grabbing him, punching him in the face, and slinging him head first into a footlocker constituted an impermissible use of force in violation of the Eighth Amendment when Plaintiff was restrained and not posing a threat to the officers or other prisoners. Neubacher objects for several reasons, which reiterate his arguments made in Defendants' Motion for Summary Judgment. He contends that no genuine issue of material fact exists because he did not use excessive force and Plaintiff only suffered *de minimis* injuries.

As explained by the Magistrate Judge, a prison official violates the Eighth Amendment if he uses force that inflicts unnecessary and wanton pain and suffering when attempting to restore order

and discipline in a correctional facility. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). The subjective component of this determination centers on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id.* at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). To prevail on the objective component of this determination, a prisoner must also demonstrate that the pain he experienced was "sufficiently serious," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), but significant injury is not required. *Hudson*, 503 U.S. at 9.

While Neubacher argues that the noise Plaintiff was making in the cellblock had the potential to create a serious or dangerous situation, Plaintiff testified that, while he responded "[n]o" to Neubacher's request to be quiet inside of his cell, he was not behaving in an aggressive manner, did not threaten the corrections officers, and was not being disruptive at the time he was assaulted. Plaintiff's testimony also demonstrates that he was handcuffed with his hands restrained behind his back when he was physically attacked by Neubacher. Construing the evidence in a light most favorable to Plaintiff, a reasonable juror could conclude from Plaintiff's testimony that Neubacher's actions were not undertaken in good faith to gain compliance, but rather were malicious because the force used was not proportionate to the threat faced. The court does not dispute Neubacher's assertions that prison guards may use force in good faith under certain circumstances to gain compliance, which may include the use of pepper spray. S*ee Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002). However, Defendant cites to no authority suggesting that, even where a prisoner has the potential to rile up other inmates, a prison official may as a matter of law use the amount of force described in the facts of this case when that prisoner is handcuffed, not aggressive, and not posing a threat to prison officials or inmates. Accordingly, the Magistrate Judge did not err in

-8-

determining that genuine disputes of material fact existed as to whether Neubacher's use of force was applied in a good faith effort to maintain or restore discipline.

Neubacher also objects to the Magistrate Judge's finding that the evidence in Plaintiff's favor precluded a finding that Plaintiff's injuries were not sufficiently serious to withstand summary judgment. According to Neubacher, the Magistrate Judge erred because Plaintiff's injuries were *de minimis*. In support, he argues that "Plaintiff's injuries were so slight that he could not even remember which side of his face was injured," and that when Plaintiff was treated by the prison nurse, he told her that he was "OK." (Defs.' Objections at 10.) Neubacher's argument that Plaintiff could not remember which side of his face was injured is premised on the fact that Plaintiff testified to injuries to the left side of his face, while his Second Amended Complaint stated that he sustained injuries to the right side of his face.

When determining an Eighth Amendment excessive force claim, the Sixth Circuit has stated that "[t]he seriousness of the injuries are not dispositive; as the Supreme Court has held, '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Williams*, 631 F.3d at 383 (6th Cir. 2011) (quoting *Hudson*, 503 U.S. at 9). The Supreme Court has made clear that the directive of its case law is "to decide excessive force claims based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). The nature and the extent of the injuries sustained by a prisoner are certainly relevant, but are not dispositive. *Id.* at 37-38. As noted by the Magistrate Judge, Plaintiff testified that he suffered pain in his eyes, a knot above his left ear, a swollen jaw, and an abrasion on his chest. Furthermore, the medical examination report (ECF No. 32-3) demonstrated that Plaintiff experienced swelling above his left ear, lacerations to the left side of his face, and a chest abrasion with bleeding. Despite Plaintiff's Second

Amended Complaint alleging injuries to the right side of his face,[1] the medical report supports Plaintiff's testimony that he sustained injuries, including injuries to the left side of his face, as a result of his encounter with Neubacher. When considering this evidence as it relates to the amount and type of force used, it undercuts Neubacher's protestations that he "softly" contacted Plaintiff and caused only *de minimis* injuries. The Magistrate Judge did not err in concluding that the extent of Plaintiff's injuries was not a basis from which to conclude that Neubacher was entitled to summary judgment on Plaintiff's excessive force claim and that genuine disputes of material fact existed as to whether or not Plaintiff's injuries were sufficiently serious. Accordingly, the court overrules Neubacher's objections regarding Plaintiff's excessive force claim.

### B. Failure to Intervene

The Magistrate Judge granted summary judgment to Naus on Plaintiff's claim that Naus failed to intervene when Neubacher used excessive force. An officer may be liable for failure to intervene where "'(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'" *Cole v. City of Dearborn*, 448 F. App'x 571, 577 (6th Cir. 2011) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). Plaintiff objects to the Magistrate Judge's R&R because he argues that genuine disputes of material fact exist as to whether or not Naus had the opportunity to intervene once Neubacher used excessive force and whether or not Naus knew or had reason to know that Neubacher was going to use excessive force.

---

[1] The court notes that, while the Complaint and First Amended Complaint were filed *pro se* by Plaintiff and did not indicate which side of his face he received injuries to, the Seconded Amended Complaint was filed by counsel after Plaintiff obtained legal representation.

While an officer has a duty to intervene when "excessive force has spanned a sufficient period of time for a nearby defendant to both perceive what was happening and intercede to stop it," the Sixth Circuit has noted that "the courts have been unwilling to impose a duty to intervene where . . . an entire incident unfolds in a matter of seconds." *Ontha v. Rutherford Cnty., TN*, 222 F. App'x 498, 506 (6th Cir. 2007) (internal quotation marks and citation omitted). As the Magistrate Judge noted, Plaintiff's description of the assault indicates that the events occurred in quick succession: Neubacher grabbed him, punched him, sprayed him with pepper spray, and then threw him towards the footlocker "immediately after." (Dixon Dep. at 16-17.) Plaintiff testified that the entire encounter between himself and Neubacher inside of his cell lasted three to four minutes, but his testimony demonstrates that the portion of the encounter that relates to the assault itself could not have lasted more than a few seconds. Even construing the facts in a light most favorable to Plaintiff, the facts of record demonstrate that the assault did not last a significant period of time. The record does not support a finding that the assault spanned a sufficient amount of time such that Naus would have had a meaningful opportunity to recognize that excessive force was occurring and intercede to stop it by the time the assault was over.

Plaintiff argues that Naus must have had time to intervene because he had time to close the door when the assault began. However, Plaintiff's testimony indicated that Naus closed the door when he was slammed into the footlocker. By the time Plaintiff hit the footlocker, the assault had already concluded. This factor tends to suggest that Naus did not have time to intercede if he only closed the door at the conclusion of the altercation. Plaintiff further argues in his objections that Naus was inside of the cell with Plaintiff and Neubacher, indicating that Naus would have had time to intervene based on his proximity. However, Plaintiff's own testimony places Naus "on the side of the [open] door" when the assault occurred, (*id.* at 16), not inside of the cell. Naus's testimony

-11-

indicates that Plaintiff was standing in the doorway of the cell while Neubacher searched it, with Naus to Plaintiff's right. He then claims that he stepped into the cell because Plaintiff ran in and attempted to headbutt Neubacher, causing Neubacher to pepper-spray Plaintiff, which resulted in Plaintiff's fall. He stated that he was not in a position to see Neubacher raise his arm to pepper-spray Plaintiff, but smelled the spray, and he did not see Plaintiff hit the footlocker. (Naus Dep. at 24-33.) In his objections, Plaintiff now refers to Neubacher's testimony that Naus was inside of the cell during at least some part of the altercation in support of his claim that Naus failed to intervene. However, Neubacher's testimony indicates that he became aware that Naus was inside of the cell behind Plaintiff because he could hear Naus yelling to Plaintiff to comply while Plaintiff attacked Neubacher. (Neubacher Dep. at 19-25.) No version of the facts regarding where Naus stood during the altercation supports Plaintiff's claim that Naus had time to intervene and failed to do so while Neubacher applied excessive force.

Plaintiff also did not meet his burden to demonstrate that Naus had reason to know that Neubacher intended to assault him. Plaintiff objects to the Magistrate Judge's determination because he asserts that the evidence demonstrates that Naus was on notice that an assault may occur because he knew that Neubacher was upset with Plaintiff, Neubacher had his pepper spray in his hand when he entered the cell, and Neubacher did not conduct a true search of the cell. First, Plaintiff points to no evidence in the record suggesting that Neubacher was upset with Plaintiff or that Naus would have inferred this. In fact, the passages Plaintiff cites to in Neubacher's deposition state that Neubacher searched the cell because Plaintiff was creating a disturbance and do not allude to any type of retaliation. (*See, e.g.*, Neubacher Dep. at 42.) Next, Naus testified that it was standard procedure for an officer to hold his pepper spray when entering an inmate's cell. While Plaintiff seems to suggest that the Magistrate Judge erred by viewing this evidence in Naus's favor

-12-

and should have speculated that the holding of pepper spray signaled ill intent, Plaintiff did not set forth any facts showing that a genuine dispute existed in this regard. Finally, it is not clear if Plaintiff argues that Neubacher's search of his cell was a "sham" because it was a pretext to assault him or it was a pretext, as the R&R seemed to interpret the argument, to obtain Plaintiff's compliance. Again, while Naus produced evidence in the form of Neubacher's testimony that the search was done to gain Plaintiff's compliance, Plaintiff points to no facts that would suggest that the nature of the search should have indicated to Naus that excessive force was to follow. Even if Neubacher conducted the search as a pretext to assault Plaintiff, Plaintiff has not demonstrated that Naus would have had a reason to anticipate that fact. Accordingly, the Magistrate Judge did not err in granting Naus summary judgment on this claim and Plaintiff's objections are overruled.

### C. Deliberate Indifference to Medical Needs

In his Report and Recommendation, the Magistrate Judge declined to address the merits of Plaintiff's claim that Naus and Neubacher acted with deliberate indifference to Plaintiff's medical needs. The Magistrate Judge determined that, while "Defendants fleetingly assert [in their reply brief] that there is no evidence showing the 30 minute delay in administering Dixon's medical treatment was due to error on their behalves," (R&R at 21), Defendants did not present any argument in their Motion for Summary Judgment as to why they were entitled to summary judgment on this claim. Defendants object to the Magistrate Judge's determination because they contend that they presented facts demonstrating that they were entitled to summary judgment on this claim and suggest that the confusion was simply the result of the absence of a "proper heading." (Defs.' Objections at 4.) However, Defendants merely point to the "Statement of Facts" section contained in their brief to demonstrate that they argued this claim on summary judgment. (*See id.* at 4-6.) A review of Defendants' Motion demonstrates that Defendants failed to make any argument that they

were entitled to summary judgment on this claim. Defendants cite to no authority suggesting that a statement of facts alone may properly be read as an argument for summary judgment. Therefore, the Magistrate Judge did not err in declining to rule on the merits of this claim and Defendants' objections are overruled.[2]

### D. Qualified Immunity

A defendant is not entitled to qualified immunity if he has violated a person's constitutional right and that right was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Magistrate Judge concluded that a reasonable officer would have known that "grabbing, punching in the face, pepper spraying, and throwing a prisoner headfirst to the ground, while the prisoner is handcuffed and non-aggressive, would be an unreasonable application of force in the context of this case." (R&R at 20.) Neubacher objects to this finding, stating that Plaintiff was required to "show that he, after undisputedly announcing his intent to carry on his disruptive behavior, he [sic] had a clearly established constitutional right to be free from a short burst of pepper spray, and to be free from being handled so lightly as to cause only *de minimis* or superficial injury the details of which Plaintiff could not recall during the pendency of the lawsuit." (Defs.' Objections at 14.) As this court has already overruled Neubacher's objection regarding his request for summary judgment on Plaintiff's excessive use of force claim, this objection relates only to the second prong of the

---

[2] Plaintiff argues that Naus is not entitled to object to this finding because Defendants filed combined objections outside of the fourteen-day period allowed for the filing of objections, while only Neubacher requested an extension of time. Because Naus and Neubacher did not have independent reasons for objecting to this finding and that objection was overruled, an analysis of whether Naus himself was permitted to object to this finding was not necessary to the outcome of this issue.

-14-

qualified immunity test: whether Plaintiff's rights were clearly established at the time of the incident.

As stated by the Sixth Circuit, "[a]n unprovoked application of force to a handcuffed and shackled prisoner would violate clearly established law under the Eighth Amendment." *Johnson v. Perry*, 106 F. App'x 467, 469 (6th Cir. 2004) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir.1995)). As the court previously explained, while construing the facts in a light most favorable to Plaintiff, genuine disputes of material fact remain as to whether or not Plaintiff's refusal to quiet down warranted the force applied when he was restrained and not posing a threat to the officers or other prisoners. On these facts, a jury could reasonably conclude that Plaintiff was not provoking Neubacher when Neubacher assaulted him. The Magistrate Judge correctly denied Neubacher's request for qualified immunity at this time.

The Magistrate Judge also stated in his qualified immunity determination that Plaintiff had not shown a constitutional violation as to Naus's conduct. Plaintiff objects to the R&R to the extent that it can be read as granting Naus qualified immunity on Plaintiff's claim that Defendants acted with deliberate indifference to Plaintiff's medical needs. However, a review of the R&R makes clear that the Magistrate Judge only determined that Plaintiff had not met its burden to demonstrate that Naus had violated Plaintiff's rights by failing to intervene. Because the Magistrate Judge granted summary judgment in Naus's favor on this claim, the Magistrate Judge did not analyze whether or not Naus was entitled to qualified immunity on that same issue. The Magistrate Judge then clearly stated that he would not resolve the merits of Plaintiff's claim for deliberate indifference to his medical needs because that issue was not properly raised by Defendants. As the Magistrate Judge did not grant Naus qualified immunity on that claim, Plaintiff's objection is overruled as moot.

## IV. CONCLUSION

The court finds that, after careful *de novo* review of the Report and Recommendation and all other relevant documents, the Magistrate Judge's conclusions are fully supported by the record and controlling case law. Accordingly, the court adopts as its own the Magistrate Judge's Report and Recommendation (ECF No. 37) and overrules all objections. Defendants' Motion for Summary Judgment is denied as to the excessive force claim against Defendant Neubacher, but granted in favor of Defendant Naus on Plaintiff's failure to intervene claim. The court also dismisses Plaintiff's state law claims for lack of jurisdiction. The only claims remaining are Plaintiff's claim for excessive force against Defendant Neubacher and his claim for deliberate indifference to his medical needs against both Defendants.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 31, 2015