IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JAMES DIXON**, *Plaintiff,* v. **MANSFIELD CORRECTIONAL INSTITUTION,** *et al.*, *Defendants.* | **CASE NO. 1:12 CV 1213** **JUDGE SOLOMON OLIVER, JR.** **MAGISTRATE JUDGE KENNETH S. MCHARGH** |

**TRIAL BRIEF OF DEFENDANTS**

In accordance with this Court's standing Civil Trial Order and the Order entered in this case (Doc. 50) Defendants file this Trial Brief.

**I.  SYNOPSIS OF THE FACTS**

On October 4, 2011, Plaintiff James Dixon (Dixon) was an inmate at Mansfield Correctional Institution. On that date, Dixon was a Level 4 (out of a possible five levels) security inmate. This means that Dixon was considered a more dangerous or troublesome inmate than a Level 1, 2, or 3 security inmate. On October 4, Dixon was speaking loudly out of his cell, even after repeated requests from staff to quiet down. After these requests, Defendants Corrections Officer Matthew Neubacher (Officer Neubacher) and Corrections Officer Albert Naus (Officer Naus) went to Dixon's cell to again ask him to quiet down. The corrections officers were concerned that Dixon would rouse the entire block to agitation, which can lead to inmates flooding their cells, breaking sprinkler heads, wreaking other havoc, and disrupting the orderly administration of the entire cell block.

When Dixon refused to settle down, he was handcuffed and removed from his cell. Dixon and Officer Naus stood outside Dixon's cell and Officer Neubacher began to conduct a cell-search. At some point during the search, Dixon charged into the cell and aggressively approached Officer Neubacher. In response, and fearing for his safety, Officer Neubacher deployed a short burst of pepper-spray. Dixon fell backwards after being sprayed and hit the locker box on the floor. Officer Neubacher immediately exited the cell and Officer Naus closed the door.

Immediately after this altercation, the officers contacted medical (or directed a third officer in the cell block to contact medical) as per policy relating to pepper-spray exposure. Shortly thereafter, Dixon was brought downstairs and was seen by Nurse Jessica Fraley (Nurse Fraley). Dixon was belligerent with Nurse Fraley. Despite his argumentative posture, she provided first aid treatment and determined that Dixon was not seriously injured. The only sign of struggle she observed was a bump on Dixon's head she treated with a product called a skin stich, which is actually more like super-glue. She also administered a tetanus shot. Eventually, Dixon told medical staff that he was alright; and the he just wanted, and was placed in, fresh air to relieve his eyes from the pepper-spray. Fresh air is the only recommended treatment for pepper-spray exposure as flushing the eyes with water or saline actually activates the pepper-spray causing more discomfort.

## II. CITATIONS TO STATUTES AND CASE LAW

*Griffin v. Hardrick*, 604 F.3d 949 (6th Cir. 2010); *Whitley v. Albers*, 475 U.S. 312 (1986); *Parrish v. Johnson*, 800 F.2d 600 (6th Cir. 1986); *Spencer v. Moore*, No. 1:11-cv-142, 2012 WL 2847497 (S.D. Ohio July 11, 2012); *Williams v. Curtin*, 631 F.3d 380 6th Cir. 2011); *Richmond v. Settles*, 450 F. App'x 448 (6th Cir. 2011); *Wilkins v. Gaddy*, 599 U.S. 34 (2010); *Hudson v.*

*McMillian*, 503 U.S. 1 (1992); *Moore v. Holbrook*, 2 F.3d 697 (1993); *Harrison v. Gregg*, No. 1:12-cv-005, 2013 WL 5353188 (S.D. Ohio Sept. 24, 2013); *Pearson v. Callahan*, 129 S. Ct. 808 (2009); *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Scott v. Harris*, 550 U.S. 372 (2007); *Taylor v. Little*, 58 F. App'x 667 (6th Cir. 2003); *Farmer v. Brennan*, 511 U.S. 825 (1982); *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505 (6th Cir. 2012); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890 (6th Cir. 2004); *Estelle v. Gamble*, 429 U.S. 97 (1976). Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997(e); Prison Rape Elimination Act, 42 U.S.C. §15601 *et seq.*

### III. EVIDENTIARY ISSUES LIKELY TO ARISE AT TRIAL

There is no video footage of the incident. There is no allegation that evidence was spoiled or improperly destroyed. Dixon will likely explore the video's disposal at trial, however. While there were video cameras in the cell block, none were trained on Dixon's door. Staff reviewed the footage from the only camera that may have filmed the altercation, but a concrete pole obscured the view of that area of the cell block. Thus, all that was filmed was the concrete pole. Staff did not retain this video because it did not record any of the altercation.

Respectfully submitted,

MICHAEL DEWINE
Ohio Attorney General

*s/ Thomas N. Anger*
THOMAS N. ANGER (0088577)
CAITLYN NESTLEROTH (0087724)
Assistant Attorneys General
Criminal Justice Section, Corrections Unit
150 East Gay Street, 16th Floor
Columbus, Ohio 43215
Phone: (614) 644-8742
Fax: (877) 584-2041
Thomas.anger@OhioAttorneyGeneral.gov
*Trial Attorneys for Defendants*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and accurate copy of the foregoing was electronically filed on September 21, 2015. Notice of this filing will be sent to Derek Diaz and Daniel Pesciotta, Hahn Loeser & Parks, LLP 200 Public Square, Suite 2800 Cleveland, OH 44114-2316, counsel for Plaintiff, via the Court's electronic filing system. This filing may be accessed through the Court's system.

                                                     s/*Thomas Anger*_____
                                                     Thomas Anger (0088577)
                                                     Assistant Attorney General